Daniel L. Feder (SBN 130867)
LAW OFFICES OF DANIEL FEDER
235 Montgomery Street Suite 1019
San Francisco, CA 94104
Telephone: (415) 391-9476
daniel@dfederlaw.com

Eric Lechtzin (SBN 248958)
EDELSON LECHTZIN LLP
411 S. State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
elechtzin@edelson-law.com

Attorneys for Plaintiffs and the Class

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE AVANT, on behalf of himself and all others similarly situated,<br><br>                     Plaintiff,<br><br>    vs.<br><br>VXL ENTERPRISES LLC, *et al*.,<br><br>                     Defendants. | No. 4:21-cv-02016-YGR<br><br><br>**PLAINTIFFS' NOTICE MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| JOHNNYE DUFF, *et al*.,<br><br>                     Plaintiffs,<br><br>    vs.<br><br>VXL ENTERPRISES LLC, *et al*,<br><br>                     Defendants. | Date: January 23, 2024<br>Time: 3:00 pm<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Ctrm.: 1 |

*The Law Office of Daniel Feder*
*235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104*

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on January 23, 2024, at 3:00 p.m. in Courtroom 1 before Hon. Yvonne Gonzalez Rogers of the United States District Court, Northern District of California, Plaintiff Leslie Avant, Johnnye Duff and Janelle Hernandez Avitia ("Plaintiffs") move the Court for final approval of the Amended Settlement Agreement (the "Amended Settlement Agreement," or the "Settlement").[1]

Plaintiff requests that this Court enter an Order (1) certifying the Rule 23 settlement class; (2) granting final approval to the proposed Settlement; (3) finally approving Plaintiffs as class representatives; (4) finally approving Plaintiffs' attorneys as Class Counsel; (5) approving payment of up to $35,000 from the Settlement to the Settlement Administrator, Analytics Consulting, LLC ("Analytics") as compensation for administering the Settlement; (6) finally approving the implementation schedule, set forth below; and (7) entering a final judgment with the terms of the Settlement.

| Effective Date | The first business day after the Court's Final Approval Order becomes Final (*i.e.*, 30 days after it is issued if there is no appeal) |
| --- | --- |
| Deadline for Defendants to pay the First Installment Payment into the Qualified Settlement Fund | Within ten (10) business days after the Effective Date |
| Deadline for Analytics to make the first installment payment for attorneys' fees and costs | Within ten (10) business days after the Effective Date |
| Deadline for Analytics to make the remainder of the first installment payments for the Settlement Awards and first installment payment to Plaintiff Avant for his individual claim, and payment in full for the Service Awards and settlement administrator | Within thirty (30) days after the Effective Date |
| Deadline for Analytics to provide a declaration to certify distribution | Within thirty (30) days of distribution of the first installment payments for the Settlement Awards |

---

[1] The Settlement was already preliminarily approved by this Court on August 16, 2023. *See* ECF 139.

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

| | |
|---|---|
| Deadlines for Defendants to pay the Second Installment Payment into the Qualified Settlement Fund | No later than one year after the First Installment Payment |
| Deadline for Analytics to pay the Second Installment Payments for attorney's fees and costs, Settlement Awards, and for Plaintiff Avant's individual claim | No later than twenty (20) business days after the Second Installment Payment has been paid by the Defendants |
| Deadline for Analytics to provide a declaration to certify distribution | Within thirty (30) days of distribution of the Second Installment payments for the Settlement Awards |
| Deadline for Defendants to pay the Third Installment Payment into the Qualified Settlement Fund | No later than one year after the Second Installment Payment |
| Deadline for Analytics to pay the Third Installment Payments for attorney's fees and costs, Settlement Awards, and for Plaintiff Avant's individual claim | No later than twenty (20) business days after the Third Installment Payment has been paid by the Defendants |
| Deadline for Analytics to provide a declaration to certify distribution | Within thirty (30) days of distribution of the Third Installment Payments for the Settlement Awards |
| Check-cashing deadline | 180 days after issuance for each installment payment |
| Deadline for Analytics to provide a written declaration to certify completion to the Court and counsel for all Parties as ordered by the Court | Upon completion of administration of the Settlement |

Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Eric Lechtzin, the Supplemental Declaration of Johanna Olson, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion.

Plaintiffs also submit a Proposed Order Granting Final Approval of the Settlement with their moving papers.

Dated: December 18, 2023.

Respectfully submitted,

By:    */s/ Eric Lechtzin*

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

Eric Lechtzin (SBN: 248958)
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
elechtzin@edelson-law.com

DANIEL FEDER
**LAW OFFICES OF DANIEL FEDER**
235 Montgomery Street, Suite 1019
San Francisco, CA 94104
Telephone: (415) 391-9476
daniel@dfederlaw.com

*Counsel for Plaintiffs and the Class*

1

**<u>TABLE OF CONTENTS</u>**

I. INTRODUCTION ...................................................................................................1

II. RELEVANT BACKGROUND AND PROCEDURAL HISTORY ........................1

    A.  The Pleadings and Consolidation of the Pleadings.........................................1

    B.  Mediation and Discovery.................................................................................2

    C.  Preliminary Approval of the Settlement..........................................................3

    D.  Notice of Settlement and Response of Class Members....................................4

    E.  Final Approval of the Settlement .....................................................................5

III. TERMS OF THE SETTLEMENT.........................................................................5

    A.  Basic Terms and Value of the Settlement.......................................................5

    B.  Class Definitions..............................................................................................6

    C.  Allocation and Awards....................................................................................7

    D.  Scope of Release..............................................................................................9

IV. ARGUMENT.........................................................................................................9

    A.  The Court Should Grant Final Approval of the Settlement .............................9

        1.  The terms of the Settlement are fair, reasonable and adequate ...............10

        2.  The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.............................................15

        3.  Class Members approve of the Settlement.................................................15

    B.  The Best Practicable Notice was Provided to the Class Members in Accordance with the Process Approved by the Court...................................16

    C.  The Named Plaintiffs Service Awards are Reasonable....................................17

    D.  The Requested Attorney's Fees and Expenses are Reasonable....................... 17

    E.  The Class Meets the Requirements for Class Certification ................................................................................................18

        1.  The Class Satisfies the Requirements of Rule 23(a)...................................18

        2.  The Class Satisfies Predominance and Superiority....................................19

V. CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

***Cases***                                                                                              ***Page(s)***

*Alonzo v. Maximus, Inc.*,
  832 F. Supp. 2d 1122 (C.D. Cal. 2011) ................................................................. 13

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................... 22

*Carlino v. CHG Med. Staffing, Inc.*,
  460 F. Supp. 3d 959 (E.D. Cal. 2020) .................................................................. 14

*Carter v. Anderson Merchandisers, LP*,
  2010 WL 1946784 (C.D. Cal. May 11, 2010) ...................................................... 16

*Churchill Village, LLC. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................ 10

*Cody v. Hillard*,
  88 F.Supp.2d 1049 (D.S.D. 2000) ........................................................................ 17

*Cooper v. S. California Edison Co.*,
  170 F. App'x 496 (9th Cir. 2006) ............................................................................ 8

*Dynamex Operations W. v. Superior Court*,
  4 Cal. 5th 903 (2018) ............................................................................................ 13

*EEOC v. Kovacevich "5" Farms*,
  2007 WL 1174444 (E.D. Cal. Apr. 19, 2007) ...................................................... 19

*Emetoh v. FedEx Freight, Inc.*,
  2020 WL 6216763 (N.D. Cal. Oct. 22, 2020) ...................................................... 10

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ................................................................................ 18

*Hall v. Best Buy Co.*,
  274 F.R.D. 154 (E.D. Pa. 2011) ........................................................................... 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................. 10, 20, 21

*Hartstein v. Hyatt Corp.*,
  2021 WL 2497926 (C.D. Cal. Mar. 19, 2021) ...................................................... 14

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

PLAINTIFFS' NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

*Heredia v. Eddie Bauer LLC*,
  2020 WL 1492710 (N.D. Cal. Mar. 27, 2020) ........................................................ 13

*Hernandez v. Sysco Corp.*,
  2020 WL 533005 (N.D. Cal. Feb. 3, 2020) .......................................................... 13

*Hill v. Walmart Inc.*,
  2021 WL 342574 (N.D. Cal. Jan. 14, 2021) ......................................................... 14

*In Re Armored Car Antitrust Litig.*,
  472 F. Supp. 1357 (N.D. Ga. 1979) .................................................................. 15

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*,
  289 F.R.D. 526 (N.D. Cal. 2012) .................................................................... 13

*In Re Four Seasons Secs. Laws Litig.*,
  58 F.R.D. 19 (W.D. Okla.1972) ...................................................................... 15

*In re Immune Response Secs. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................. 11

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................... 15, 17

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ...................................................................... 10

*In re Toys R Us, Inc.*,
  295 F.R.D. 438 (C.D. Cal. 2014) .................................................................... 16

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) ...................................................................... 15

*Koike v. Starbucks Corp.*, No. C,
  2008 WL 7796650 (N.D. Cal. June 20, 2008) ......................................................... 13

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ....................................................................... 12

*Langford v. Devitt*,
  127 F.R.D. 41 (S.D.N.Y. 1989) ...................................................................... 18

*Mandujano v. Basic Vegetable Products, Inc.*,
  541 F.2d 832 (9th Cir. 1976) .................................................................... 17, 18

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ....................................................................... 19

*Morrison v. Ross Stores, Inc.*,
   2022 WL 17592437 (N.D. Cal. Feb. 16, 2022) .......................................................... 17

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .............................................................................. 10, 15, 18

*Roe v. SFBSC Management, LLC*,
   2022 WL 17330847 (N.D. Cal. Nov. 29, 2022) ........................................................ 15

*Sandoval Ortega v. Aho Enters., Inc.*,
   2021 WL 5584761 (N.D. Cal. Nov. 30, 2021) .......................................................... 16

*Seever v. Carrols Corp.*,
   528 F. Supp. 2d 159 (W.D.N.Y. 2007) .................................................................... 13

*Sherman v. Schneider Nat'l Carriers, Inc.*,
   2019 WL 3220585 (C.D. Cal. Mar. 6, 2019) ............................................................ 14

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .............................................................................. 16, 18

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .......................................................... 10, 16

**Statutes**

29 U.S.C. § 201 .......................................................................................................... 1

**Other Authorities**

Assembly Bill No. 5 ...................................................................................................... 13

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

PLAINTIFFS' NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

## I.    INTRODUCTION

Plaintiffs Leslie Avant, Johnnye Duff and Janelle Hernandez Avitia, individually and on behalf of all others similarly situated, and Defendants VXL Enterprises LLC and Matthew Crouse (collectively, "Defendants") entered into a proposed Settlement memorialized in the Amended Settlement Agreement ("Settlement") to resolve claims brought on behalf of hourly paid medical staff who were hired by Defendants as independent contractors.[2] The Settlement, which resolves numerous wage and hour claims on behalf of Settlement Class Members and which are unlikely to have been prosecuted as individual actions, provides for a total non-reversionary settlement of $1,200,000 to be paid out in three annual installments over a period of three years.

The Court granted preliminary approval of the Settlement on August 16, 2023. *See* ECF 139. Following the Court's order, notice of the Settlement was sent to the Class Members on September 6, 2023. Declaration of Johanna Olson ("Olson Decl."), ECF 150-1, ¶¶ 8-9.[3] The exclusion and objection period expired on November 7, 2023. The Class Members' response has been overwhelmingly positive. Indeed, no objections have been filed, and no Class Members have opted out of the Settlement. *Id*. at ¶¶ 14-15.

The Settlement is fair, reasonable, and adequate in all respects. Accordingly, Plaintiffs respectfully submit that the Settlement should be finally approved.

## II.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.    The Pleadings and Consolidation of the Pleadings

On March 23, 2021, Plaintiff Avant filed a Class and Collective Action Complaint in the U.S. District Court for the Northern District of California, which asserted Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), California state law claims, and an individual breach of contract claim against VXL ("Avant Action"), ECF 1.

---

[2] The Amended Settlement Agreement was filed as Exhibit A to the Court's Order Granting Preliminary Approval of Class Action Settlement and Setting Deadlines for Notice, Objection, Exclusion, and Final Fairness Hearing. *See* ECF 139-1.

[3] Analytics mailed Corrective Notices, at their own expense, on November 2, 2023, after it discovered that it had inadvertently based the estimated award amounts on pro-rata shares of class members' total hours worked, instead of their overtime hours worked. Analytics determined the largest difference between the original payment estimates and the corrected payment estimates was only 5%. *Id*. at ¶ 11

1

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

On November 12, 2021, Plaintiffs Johnnye Duff and Leslie Hernandez Avitia filed a related action in the U.S. District Court for the Central District of California alleging violations of the FLSA and the laws of California. ("Duff Action")

On February 4, 2022, Plaintiff Avant filed an Amended Complaint, which named Matthew Crouse as an additional Defendant. ECF 59. On March 14, 2022, the Duff Action was transferred to the U.S. District Court for the Northern District of California. On March 25, 2022, the Court signed a Related Case Order, relating the Duff Action to the Avant Action. ECF 72.

On May 2, 2022, Plaintiffs filed an Unopposed Motion for Consolidation of Related Cases Pursuant to Fed. R. Civ. P. 42(a). On May 9, 2022, the Court granted the Parties' Motion to Consolidate, as well as the Stipulation for Conditional Certification and Notice to Collective Members. ECF 88.

On June 6, 2022, Plaintiffs filed a Consolidated Class Action and Collective Complaint against Defendants (the "Consolidated Complaint"), which alleged claims on behalf of medical staff who were hired by Defendants as independent contractors to provide treatment for inmates suffering from COVID-19 at various state and federal prisons in California. ECF 93. Plaintiffs allege that Defendants' misclassification of medical staff – who supported COVID-19 patients in prison settings – as independent contractors violated the FLSA and California labor laws. Plaintiff Avant also alleged an individual breach of contract claim against Defendants for termination of his contract without sufficient notice and/or cause. Defendants filed their Answer on July 18, 2022. ECF 101.

**B.    Mediation and Discovery**

On December 1, 2021, the Parties participated in a settlement conference via Zoom in the Avant Action (which encompassed the state prisons) before U.S. Magistrate Judge Alex G. Tse. Prior to the settlement conference, Defendant VXL provided Class Counsel with time and payroll records, which Class Counsel reviewed and analyzed. Plaintiff also retained an expert who calculated a damage estimate based on Plaintiff's claims in this case. Declaration of Eric Lechtzin, ("Lechtzin Decl."), ¶ 5.

This initial mediation was unsuccessful, and litigation continued in the ordinary course, including the addition of Matthew Crouse as a Defendant, the briefing and filing by Plaintiffs of a

motion for conditional certification under Section 216(b) of the FLSA, and the subsequent approval by the Court of the Joint Stipulation for Conditional Certification and mailing of the requisite notices. The Parties also engaged in discovery, with Defendants providing their Responses to Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of Requests for Production of Documents. *Id.* ¶ 6.

The Parties attended a second settlement conference before Magistrate Judge Tse on September 28, 2022. To prepare for mediation, the Parties engaged in further informal pre-mediation discovery, which included Defendants' production of updated records for the proposed Settlement Class (*i.e.*, medical staff who were hired by Defendants to work at both state prisons and the federal prison at Lompoc), which Class Counsel reviewed and analyzed. Lechtzin Decl. ¶ 7. Plaintiffs' expert reviewed the matter and calculated an updated damages estimate based on Plaintiffs' claims in the case. *Id.* In addition, the Parties submitted updated mediation statements addressing the strengths and weaknesses of their respective positions. *Id.* Defendants also produced copies of VXL's audited financial statements, so that the parties and Magistrate Judge Tse could address VXL's ability to withstand a judgment and/or fund a settlement of Plaintiffs' claims. *Id.* Negotiations between the Parties continued and on October 25, 2022, the Parties participated in a third settlement conference with Magistrate Judge Tse. *Id.* ¶ 8.

The Parties continued settlement negotiations after the Defendants' original counsel withdrew and current defense counsel entered their appearance. *Id.* ¶ 9; ECF 114, 115, 120. The Parties successfully reached a settlement in principle on March 20, 2023. Thereafter, the Parties worked collaboratively on finalizing the terms of the Settlement Agreement and corresponding documentation. The Settlement Agreement was fully executed on May 18, 2023. Lechtzin Decl. ¶ 10. The Parties amended the Settlement Agreement to address concerns raised by the Court at the hearing on June 27, 2023. The Amended Settlement Agreement was executed on July 21, 2023. *Id.* ¶ 11

### C.    Preliminary Approval of the Settlement

Plaintiffs filed their Motion for Preliminary Approval on May 18, 2023. *See* ECF 128. On July 21, 2023, Plaintiffs filed a supplemental brief, as well as a Stipulation, to address concerns raised by the Court at the hearing on June 27, 2023. ECF 135, 136. The Court issued an order on

August 16, 2023, granting the Preliminary Approval Motion. The Court found "the Settlement Agreement falls within the range of possible approval as fair, adequate, and reasonable." ECF 139. The Court further found that the *Hanlon* factors "indicate the settlement here is fair and reasonable" as "[p]roceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals. This is particularly true for plaintiffs' meal and rest claims and off-the-clock work claims. Plaintiffs' derivative claims were also subject to a good faith argument and as such may not be recoverable. The amount offered in settlement compares favorably to other wage-and-hour settlements approved in California and around the count[r]y. " *Id*. The Court also approved the Notice of Settlement, which it attached as Exhibit B to its Order, and authorized the proposed notice plan. *Id*.

### D.    Notice of Settlement and Response of Class Members

Following the entry of the Court's preliminary approval order, the Settlement Administrator, Analytics, received the Class member information from Defendants on August 24, 2023. Olson Declaration (ECF 150-1) ¶ 7. This data contained the names, last known mailing addresses, email addresses, records of hours worked, and other personal information for 101 Class members. *Id*. Analytics sent the Notices to the Class Members via U.S. Mail and email. *Id*. at ¶¶ 8-9, 11. Analytics also put Settlement documents on a website. *Id*. at ¶5. Analytics also established a toll-free call center for telephone inquiries from Class Members. *Id*. at ¶ 4.

In accordance with the Northern District of California's Procedural Guidance for Class Action Settlements, which directs that, a "motion for final approval should include information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who opted out, and the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections." N.D. Cal., Procedural Guidance for Class Action Settlements (Aug. 4, 2022), Plaintiffs note that as of December 4, 2023, three notices remained undelivered via mail because Analytics was unable to find updated addresses. Olson Declaration (ECF 150-1) at ¶ 12. However, of the three Class Members with undelivered Notices, one also had a bounced email address, but the remaining two did not. Supplemental Declaration of Johanna Olson ("Olson Suppl.

1   Decl.") ¶ 3. Additionally, not a single objection has been filed and no Class Member has elected to

2   opt out of the Settlement. Olson Declaration (ECF 150-1) at ¶ 12; Lechtzin Decl. ¶ 4.[4]

3          **E.     Final Approval of the Settlement**

4          The Final Approval Hearing is currently scheduled for January 23, 2024. With this Motion,

5   Plaintiffs ask the Court to grant final approval of this Settlement. Following an order by the Court

6   on this Motion, the Parties and the Settlement Administrator will execute the final steps of the

7   settlement process, including sending individual checks over the next three (3) years to all

8   participating Class Members for their Settlement Awards.

9   **III.    TERMS OF THE SETTLEMENT**

10         **A.     Basic Terms and Value of the Settlement**

11         Defendants have agreed to pay a non-reversionary Gross Settlement Amount of $1,200,000

12  to settle all aspects of the case. Amended Settlement Agreement ("ASA"), ECF 139-1, ¶ 14(m). The

13  "Net Settlement Amount," which is the amount available to pay settlement awards to Settlement

14  Class Members, is defined in the Amended Settlement Agreement as the amount remaining after the

15  payment of the Class Counsel's attorneys' fees of up to 30% of the Gross Settlement Amount, or

16  $360,000), plus Class Counsel's out of pocket costs; any service award to the Plaintiffs in recognition

17  of their effort and work (up to $5,000 for each of the three Plaintiffs); Settlement Administrator's

18  fees and costs up to $35,000; and $20,000 to Plaintiff Leslie Avant for a general release that includes

19  a settlement of his individual breach of contract claim.[5] *Id*. at ¶ 14(o).

20         The Settlement also provides that in the event of a sale of VXL (or any other business

21  combination that would cause VXL to cease to exist), Defendants will make any remaining payments

22  at or before the closing of such sale (or other business combination) and Defendant VXL will pay

23  an additional $350,000 to the Gross Settlement Amount (*i.e.*, increasing the Gross Settlement

24  ─────────────
    [4] Plaintiffs' Settlement did not require claim forms. Consistent with the N.D. Cal. Guidance,
25  Plaintiffs also provided with their Motion in Support of Attorneys' Fees and Expenses and Named
    Plaintiffs' Service Awards detailed lodestar information, with declarations by class counsel as to the
26  number of hours spent on various categories of activities related to the action by each biller, together
    with hourly billing information and supported their requests for service awards.
27  [5] Fifty percent (50%) of each Settlement Award shall be treated shall be treated as non-wage
28  penalties and liquidated damages and shall not be subject to FICA, FUTA and state and local
    withholding taxes.

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

Amount to $1,550,000), which will be distributed up to 1/3 for Attorneys' Fees and any Settlement Administrator costs, with the remaining amount to be distributed to Settlement Class Members. VXL's obligation to pay such amount shall be terminated seven (7) days after payment in full of the Gross Settlement Amount. ASA, ¶ 42. The Settlement also provides extra protection to the Settlement Class Members in the event of VXL's bankruptcy. Plaintiffs and the Settlement Class Members will each have a priority wage claim in the amount of their pro rata portion of the $1.2 million Gross Settlement Amount. ASA, ¶ 41.

The Gross Settlement Amount (and other provisions above) are a negotiated amount that resulted from substantial arms' length negotiations and significant investigation and analysis by Class Counsel. Class Counsel and their expert economist based their damages analysis and settlement negotiations on discovery, including the payroll data, financial statements, discussions with numerous Opt-In Plaintiffs, and Independent Contractor Processing/onboarding documents between Plaintiffs and Defendants.

**B.     Class Definitions**

An individual is a member of the Class under the proposed Settlement if he or she belongs to any of the following:

- The "California Class" means all Defendants' hourly paid staff classified by Defendants as ACF Clinical Managers, RNs, EMT-Ps, CNA/EMTs, EMTs, and Lab Techs who were hired and paid by Defendants pursuant to a 1099 rather than a W-2 to provide treatment for inmates suffering from COVID-19 at various state and federal prisons in California, and who are or were employed by the Defendants between May 1, 2020 and November 30, 2020 (the "Relevant Time Period"), and who do not validly exclude themselves from this settlement.

- The "California State Prison Sub-Class" means all Defendants' hourly paid staff classified by Defendants as ACF Clinical Managers, RNs, EMT-Ps, CNA/EMTs, EMTs, and Lab Techs who were hired and paid by Defendants pursuant to a 1099 rather than a W-2 to provide treatment for inmates suffering from COVID-19 at various state prisons

in California, who are or were employed by the Defendants between May 1, 2020 and November 30, 2020, and who do not validly exclude themselves from this Settlement.[6]

## C.    Allocation and Awards

Class Members will each receive a settlement award check without the need to submit a claim form. Each Settlement Class Member's settlement share will be determined based on a formula that accounts for the recorded number of overtime hours they worked for Defendants (*i.e.*, hours worked in excess of 8 hours a day) during the limitations period. ASA, ¶ 27. Specifically, for each overtime hour worked during the limitations period, each Settlement Class Member will receive one (1) settlement share. In recognition of the increased value of the additional legal protections offered to those Settlement Class Members who worked at California state prisons, including San Quentin, each overtime hour during which work was performed at San Quentin or other California state prisons will be equal to one and a quarter (1 ¼) settlement shares. *Id*. The total number of settlement shares for all Settlement Class Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Settlement Class Member's number of settlement shares to determine each Settlement Class Member's Settlement Award. *Id*.

The plan of allocation tracks the differences in substantive law and penalty claims, by weighing the overtime hour shares more heavily for work performed by the California state class members. Specifically, the California meal and rest break and wage statement claims were brought only on behalf of Plaintiff Avant and Class members who worked in California state prisons (as opposed to federal prisons) due to the federal enclave doctrine, which applies to Plaintiffs Duff and

---

[6] The Amended Settlement Agreement also provides that Opt-Ins shall be deemed to have released their claims under the FLSA, while other Settlement Class Members will be deemed to have released their FLSA claims if they cash or deposit their Settlement Award check. *Id*. at ¶ 18. In its Order granting Preliminary Approval, the Court found that it would continue to conditionally certify the class for FLSA purposes as Plaintiffs had demonstrated "that all class members were similarly situated" as "they were all subject to the same employment policies and practices." ECF 139 at 5. The Collective is defined as "Defendants' hourly paid staff classified by Defendants as ACF Clinical Managers, RNs, EMT-Ps, CNA/EMTs, EMTs, and Lab Techs who were hired and paid by Defendants pursuant to a 1099 rather than a W-2 to provide treatment for inmates suffering from COVID-19 at various state and federal prisons in California, and who are or were employed by the Defendants between May 1, 2020 and November 30, 2020." *See* ECF 135.

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA  94104

7

Avitia and other Class members who worked at Lompoc, a federal enclave. Under the federal enclave doctrine, state law that was enacted after the creation of the enclave does not apply to the enclave. *See Cooper v. S. California Edison Co.*, 170 F. App'x 496 (9th Cir. 2006) (federal enclave doctrine preempts state law claims that do not pre-date the acquisition of the enclave). If this case were not resolved by the Settlement, Defendants would have argued that the federal enclave doctrine applies to all of the state law claims for individuals who worked at Lompoc.

The Settlement Notice provided the estimated pre-tax amount of the Class Member's Individual Settlement Award, assuming full participation in the settlement. The first installment of Settlement Awards will be paid to Settlement Class Members by the Settlement Administrator within thirty days after the Effective Date or as soon as practicable. ASA, ¶ 37. Defendants shall pay the second annual installment in the amount of Four Hundred Thousand Dollars ($400,000) no later than one year after Defendants' first payment. ASA, ¶ 32. Defendants shall pay the third and final annual installment in the amount of Four Hundred Thousand Dollars ($400,000) no later than one year after Defendants' second installment payment. *Id*. The payments of attorneys' fees to Class Counsel will be made on an installment basis consistent with the payment schedule, with one-third (1/3) of Counsel's attorneys' fees and costs that are approved by the Court to be paid within ten (10) business days after the Effective Date. *Id*. ¶ 33. Additionally, Plaintiff Avant will be paid Twenty Thousand dollars ($20,000) for his individual breach of contract claim - the Seventh Claim for Relief in the Consolidated Complaint - on an installment basis consistent with the payment schedule. *Id*. ¶ 36. Only the Service Awards and the estimated Settlement Administration Costs will be paid in full from the First Installment. ASA, ¶ 33. All settlement checks issued to Settlement Class Members will remain negotiable for 180 days from the date they are issued, and shall be accompanied by a cover letter when they are sent to eligible Settlement Class Members explaining as such. If the first and second installment checks are not cashed, they will be voided and distributed in the next installment pro rata to the Settlement Class Members who did cash their checks. Subsequent checks will not be sent to Settlement Class Members who could not be located and/or did not cash their prior checks. Any uncashed check funds remaining after the final check-cashing deadline (*i.e.*, after the third annual installment) will be paid to an agreed *cy press* recipient approved by the Court. ASA, ¶ 39.

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

The Parties propose, subject to the Court's approval, the University of California Berkeley's Institute for Research on Labor and Employment, which promotes better understanding of the conditions, policies, and institutions that affect the well-being of workers and their families and communities, as the *cy pres* recipient.

**D.    Scope of Release**

The release contemplated by the proposed Settlement will release all claims in connection with the lawsuit that is properly limited to the alleged claims and subject matter of this lawsuit. Specifically, paragraph 17 of the Amended Settlement Agreement provides:

> After the entirety of the Gross Settlement Amount Fund has been paid by Defendants, all Settlement Class Members shall and hereby do release and discharge Matthew Crouse, VXL and all Releasees, finally, forever and with prejudice, from any and all state wage and hour claims, as well as all unpaid overtime allegations and causes of action asserted or that could have been asserted in Plaintiffs' Consolidated Complaint based upon the facts asserted, for work performed by Settlement Class Members for VXL during the Relevant Time Period, including claims for liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under state law, state wage law, state wage payment law, state minimum wage law, any other wage payment or wage and hour law, or state common law claims (including unjust enrichment or quantum meruit) that arose during the Relevant Time Period.[7]

ASA, ¶ 17.

**IV.    ARGUMENT**

**A.    The Court Should Grant Final Approval of the Settlement**

A certified class action may only be settled with Court approval. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which any objecting class members may be heard, and

---

[7] With respect to Plaintiff Avant, the Settlement Agreement provides for a general release in exchange for $20,000 for his breach of contract claim. ASA, ¶ 36.

PLAINTIFFS' NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

When reviewing a motion for approval of a class settlement, the Court "need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class." *Emetoh v. FedEx Freight, Inc.*, No. 17-CV-7272-YGR, 2020 WL 6216763, at *3 (N.D. Cal. Oct. 22, 2020)

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Included in this analysis are considerations of: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the Court should find that the Settlement is fair, reasonable, and adequate, and grant final approval to the Settlement.

**1. The terms of the Settlement are fair, reasonable, and adequate**

In light of the uncertainties of protracted litigation, the Settlement amount reflects a fair and

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

reasonable recovery for the settlement.[8] The Settlement was reached after extensive investigation and research, thorough calculations of damages, risk evaluation, informal exchanges of data and documents—including an evaluation of Class Members' payroll data—and an exchange of information required to evaluate potential defenses and damages. With the information produced by Defendants, both prior to and during the mediation, it was sufficient to permit Class Counsel to adequately evaluate the Settlement. Notably, approval of a class action settlement does not require that discovery be exhaustive. *See, e.g.*, *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

Plaintiffs calculated their maximum damages and penalties that could be awarded in this action, as follows:

| Damages/Penalties | Amount |
|---|---|
| Unpaid Overtime | $1,426,761 |
| Off-the-Clock | $839,927 |
| Liquidated Damages | $1,657,474 |
| Meal & Rest Breaks | $972,267 |
| Wage Statement Claims | $37,800 |
| Waiting Time Penalties | $2,637,287 |
| **Total** | $7,571,516 |

The amount of unpaid overtime based on Defendants' records is $1,426,761. In addition, Plaintiffs' claim for unpaid off-the-clock work is $839,927, based on the assumption of one (1) hour of off-the-clock work per worker per day. Additionally, Plaintiffs estimated liquidated damages for

---

[8] As this Court noted in its Order Preliminary Approving the Settlement, Plaintiff Avant's settlement for his individual claim is also appropriate. *See* ECF 139 ("Mr. Avant's settlement for his individual claim, moreover, does not make him an atypical representative. Mr. Avant brought his claim because he was terminated without the required fourteen-days' notice under his contract. Assuming the merits of his misrepresentation claims, damages for lost wages over those fourteen days would equal $12,563. With the potential for punitive damages and taking into account Mr. Avant's general release of his claims against XVL, the $20,000 settlement for his individual claim is appropriate.")

PLAINTIFFS' NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

opt-in plaintiffs under the FLSA in the amount of $1,657,474 for all unpaid overtime and off-the-clock work.

For Class Members who worked in a California state prison and possess claims under the California Labor Code, Plaintiffs estimate additional damages of $972,267 for meal and rest break violations; $37,800 for wage statement claims; and waiting time penalties of $2,637,287. The *maximum* potential damages and penalties available using these favorable assumptions for the putative class were calculated to be $7,571,516. Lechtzin Decl. ¶ 14. The average recovery pretax (net of attorney's fees, litigation costs, service awards, Avant's contract claim, and claims for administration expenses) is approximately $7,348.35 per Class Member. Lechtzin Decl. ¶ 19. The payment amount to each Class Member is contained in Exhibit A to the Supplemental Declaration of Johanna Olson. In light of all of the risks, the settlement amount is fair, reasonable, and adequate.

The estimated damages and penalties, above, are subject to substantial discounts for multiple reasons. First, in preparation for the settlement conferences and at the settlement conferences, Defendants' counsel represented that Defendants had serious financial concerns about VXL's ability to pay any judgment or settlement amount beyond a certain point. Lechtzin Decl. ¶ 7. As discussed above, in order to provide protection for the Settlement Class, the Settlement Agreement requires Defendant VXL to provide Class Counsel at least fourteen (14) days prior written notice of its intention to file bankruptcy and a stipulation by VXL that in the event that it files for bankruptcy, VXL will agree that Plaintiffs and Settlement Class Members will each have a priority wage claim in the amount of their pro rata portion of the $1.2 million. The Ninth Circuit has repeatedly ruled that the risk of a defendant's bankruptcy is a factor weighing in favor of settlement approval. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) (rejecting objector's challenge to class action settlement where the lower court "meaningfully accounted for potential value of members' claims ... and noted risks of bringing such claims to trial").

Second, Defendants contend that the medical staff were properly classified as independent contractors and that their compensation practices and wage statement policies comply with all aspects of California and federal law. Lechtzin Decl. ¶ 16. Specifically, Defendants argued that they were not liable under the "ABC test" as set out in *Dynamex Operations W. v. Superior Court*, 4 Cal.

5th 903 (2018), and codified in Assembly Bill No. 5, which determines whether an independent contractor is wrongly misclassified, as (1) the Class Members were not subject to the requisite control of VXL; (2) the Class Members performed work outside the usual course of VXL's business, which is a global security services organization; and (3) Class Members were customarily engaged in an independently established trade, occupation or business during the time in which they provided their work for VXL, with Class Members often shifting their schedules to accommodate other employment obligations. *Id*.

There was also a risk that Plaintiffs would not succeed in obtaining and/or maintaining a collective action or certified class through trial and appeals. This is particularly true for Plaintiffs' off-the-clock and meal and rest break claims. *See*, *e.g.*, *Heredia v. Eddie Bauer LLC*, No. 16-CV -06236-BLF, 2020 WL 1492710, at *1 (N.D. Cal. Mar. 27, 2020) (noting decertification of the class based on variations in the employees' experiences regarding exit inspections); *In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), *aff'd*, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Hernandez v. Sysco Corp.*, No. 16-CV -06723-JSC, 2020 WL 533005, at *8 (N.D. Cal. Feb. 3, 2020) (denying certification of meal and rest break classes, noting that "Courts routinely decline to certify meal and rest break classes" due to individualized issues).[9]

Additionally, Plaintiffs' derivative claims are subject to a good faith argument and, as such,

---

[9] Proving off-the -clock work is more challenging than overtime claims for which the employer has accurate timekeeping records, and Plaintiffs would be forced to rely upon workers' testimony (which may be conflicting) to prove such claims. *See Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 169 (W.D.N.Y. 2007) (observing "plaintiffs' claims that they worked off-the -clock ... are supported solely by the testimony of plaintiffs themselves ... which vary dramatically between the plaintiffs and are uncorroborated by any other evidence."); *Hall v. Best Buy Co.*, 274 F.R.D. 154, 170 (E.D. Pa. 2011) (concluding that there "existed substantial barriers to proving liability for off-the -clock work" that was unsupported by video tape evidence); *Koike v. Starbucks Corp.*, No. C 06-3215 VRW, 2008 WL 7796650, at *9 (N.D. Cal. June 20, 2008), *aff'd*, 378 F. App'x 659 (9th Cir. 2010) (lack of common proof of off-the -clock overtime was fatal to such claims).

Moreover, such claims require proof that the employer had actual or constructive knowledge of the off -the -clock work. *See Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1137 (C.D. Cal. 2011) ("To prevail on claims of off-the -clock overtime work under California law, a plaintiff must demonstrate knowledge on the part of the employer of the overtime work the individual performed.")

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

1   the claims may not be recoverable (*i.e.*, *Hill v. Walmart Inc.*, No. 19-CV-05436-JST, 2021 WL

2   342574, at \*8 (N.D. Cal. Jan. 14, 2021), *aff'd*, 32 F.4th 811 (9th Cir. 2022) (dismissing plaintiff's

3   waiting time penalty claim on summary judgment finding "good faith" where defendant had some

4   basis to believe it properly classified its employees as independent contractors). *See also Carlino v.*

5   *CHG Med. Staffing, Inc.*, 460 F. Supp. 3d 959, 972 (E.D. Cal. 2020) ("A 'good faith dispute' that

6   any wages are due occurs when an employer presents a defense, based in law or fact which, if

7   successful, would preclude any recovery on the part of the employee. The fact that a defense is

8   ultimately unsuccessful will not preclude a finding that a good faith dispute did exist.") (internal

9   citation and quotation omitted). Thus, even if Defendants ultimately were not successful on the

10   merits of their misclassification claims, they could still prevail based on their "good faith" belief.[10]

11         While Plaintiffs believe in the strength of their claims, the risks to Class Members of

12   continued litigation were significant. This action was poised for a contentious pre-certification

13   motion work, which would have consumed a substantial amount of attorney time, court time, and

14   depending on the result, potential appeals. Had the Parties not settled, the litigation would likely

15   have been risky, protracted, and costly. The Parties also would have had to engage in additional

16   formal discovery, brief a class certification motion, as well as a brief in opposition of decertification,

17   followed by potential summary judgment, *Daubert* motions, motions *in limine*, and then trial. Each

18   stage would have entailed added risk and necessarily imposed delay before any relief could be

19   provided to the Class.

20         Courts routinely approve settlements that provide a fraction of the maximum potential

21   recovery. *See*, *e.g.*, *Officers for Justice*, 688 F.2d at 623; *In re Warfarin Sodium Antitrust Litig.*, 212

22   F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to

---

23   [10] Moreover, Plaintiffs' counsel discounted Plaintiff's wage statement claim in recognition of

24   caselaw dismissing such claims where the wage statements reflect the actual amount paid. *See*, *e.g.*,
  *Hartstein v. Hyatt Corp.*, No. CV204874DSFJPRX, 2021 WL 2497926, at \*4 (C.D. Cal. Mar. 19,

25   2021) (dismissing wage statement claims as an impermissible double recovery where the plaintiff
  did not allege the wage statements inaccurately documented the amount of money she actually

26   received); *Sherman v. Schneider Nat'l Carriers, Inc.*, No. CV 18-08609 -AB (JCx), 2019 WL

27   3220585, at \*5 (C.D. Cal. Mar. 6, 2019) ("Plaintiff's opposition implicitly concedes that the wage
  statements accurately stated the wages actually paid. Accordingly, the wage statements do not

28   violate § 226(a) even if the amount paid was incorrect.")

PLAINTIFFS' NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

14% of the total estimated damages); *In Re Armored Car Antitrust Litig.*, 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages).

Here, the Settlement provides approximately 15.8% of total potential damages and penalties, which is within the range of other settlements approved. *See* ECF 136 (Plaintiffs' Supplemental Brief in Support of Unopposed Motion for Preliminary Approval describing comparable cases) and ECF 137-4 (providing a chart of comparable settlements). For example, in *Roe v. SFBSC Management, LLC*, 2022 WL 17330847 (N.D. Cal. Nov. 29, 2022), which included collective and class action allegations that defendants violated the FLSA, California Labor Code, and other state laws, by misclassifying dancers as independent contractors, the settlement required defendants to pay $4.5 million to establish a non-reversionary fund for the benefit of 8,402 class members, as well as changed business practices valued at a minimum of $2,000,000. *Id*. at *6. While settlement class members could elect to receive "Dance Fee Payments" out of a $500,000 "Dance Pool," which was included in the $4.5 million common fund, any settlement class members who did not elect to receive such payments, got a cash payment from the remaining $4,000,000 without the need to file any claim form, like in this case. *Id*. at 7. Additionally, like the case at hand, defendants deposited the settlement funds in installments over a number of years. *Id*. The estimated average recovery, when measured by the net settlement amount, is $274.35 (5% of the average damages per dancer), plus the injunctive relief. Looking at the gross settlement amount of $6.5 million (which includes the value of the injunctive relief), the settlement recovered is approximately 14% of the total damages.[11] *Id*. Plaintiffs' settlement compares favorably as it provides approximately $7,348.35 per Class Member (calculated by dividing the Net Settlement Amount by the number of Class Members) and approximately 15.8% of total potential damages.

Plaintiffs' chart (ECF 137-4) also includes *Eltahir v. Nomi Health, Inc.*, 0-22-cv-61046-

---

[11] Total damages were estimated at $45.8 million. *See Roe v. SFBSC Management, LLC*, 3:2014-cv -03616-LB (N.D. Ca.), ECF No. 269 (Motion for Final Approval of Class Action Settlement) at ECF Number 15 of 24 ("Plaintiffs' best-case damages estimate is $45.8 million).

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

CMA (S.D. Fl.), ECF Nos. 85, 87, which provided for a release of under 50% of the total amount of FLSA damages for Plaintiffs, consisting of Defendants' medical staff, who alleged they were misclassified as independent contractors. The Court approved the settlement, where Plaintiffs alleged a discount was warranted in view of defenses raised by the defendants that the plaintiffs were independent contractors. Here too, Defendants have raised defenses that Plaintiffs did not satisfy the ABC test. Moreover, while the percentage of recovery is smaller in the instant litigation, there is no indication there were any inability to pay or other financial concerns in Eltahir. *See e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ("Here[,] one factor predominates to make clear that the district court acted within its discretion [in approving the settlement]. That factor is [the defendant's] financial condition."); *Sandoval Ortega v. Aho Enters., Inc.*, No. 19-cv -00404-DMR, 2021 WL 5584761, at *7–8 (N.D. Cal. Nov. 30, 2021) (taking the defendants' "financial condition" into account in evaluating the settlement amount and noting their "financial constraint and hardship" as a result of the pandemic); *In re Toys R Us, Inc.*, 295 F.R.D. 438, 452 (C.D. Cal. 2014) (damages could be "catastrophic" for the defendant, which "weigh[ed] in favor of [settlement] approval").

## 2. The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel

Courts presume a settlement is fair where it is reached through arm's-length bargaining. *See Wren*, 2011 WL 1230826, at *14 (approving settlement reached through arms-length negotiations supervised by an experienced mediator). Furthermore, where counsel is well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10 ("Class Counsel's favorable opinion of the terms of the settlement supports approval…"); *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. Lechtzin Decl. ¶ 20. The Parties participated in settlement conferences before Magistrate Judge Tse. *Id*. While

The Law Office of Daniel Feder ◆ San Francisco, CA 94104

235 Montgomery Street, Suite 1019

the Parties did not settle by the conclusion of the settlement conferences, they continued negotiations in order to reach a settlement in principle. The Parties then spent several months negotiating the long-form settlement agreement, with extensive back-and-forth correspondence related to the terms and details of the Settlement. *Id*.

### 3. Class Members approve of the Settlement

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of a settlement is a factor of great significance. *See Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *Morrison v. Ross Stores, Inc.*, No. 4:18-CV-2671-YGR, 2022 WL 17592437, at *5 (N.D. Cal. Feb. 16, 2022) (noting with approval the positive reaction of the class, which had no objections, as "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). Courts have found that a relatively low percentage of objectors or opt outs is a strong sign of fairness that factors heavily in favor of approval. *See Cody v. Hillard*, 88 F. Supp. 2d 1049, 1059-60 (D.S.D. 2000) (approving the settlement in large part because only 3% of the apparent class had objected to the settlement).

No Class Members have objected to the Settlement, and no Class Members have opted out of the Settlement. *See* Lechtzin Decl. ¶ 4. This shows widespread support for the Settlement among Class Members and gives rise to a presumption of fairness.

### B. The Best Practicable Notice was Provided to the Class Members in Accordance with the Process Approved by the Court

Pursuant to the Court's August 16, 2023, preliminary approval order, Analytics sent the Court approved Notice of Settlement to the Class members in accordance with the terms of the Settlement. Olson Decl. ECF 150-1. The Notices were sent via U.S. Mail and email and accompanying court documents were posted on a website where Class Members could view them. Olson Decl. ¶¶ 5, 8-9, 11, ECF 150-1.

Notice of a class action settlement is adequate where the notice is given in a "form and

The Law Office of Daniel Feder

235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

manner that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d at 835 (9th Cir. 1976). The notice should be the best "practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993). Sending individual notices to settlement class members' last-known addresses constitutes the requisite effort. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement.").

The Settlement Administrator followed the procedures set forth in the Court-approved notice plan. Reasonable steps have been taken to ensure that all Class Members receive the Notice. *See supra* Section II.D. Ultimately, of the notices distributed via U.S. Mail, three notices are undeliverable. However, only one of the three notices were sent to an email address that bounced back.

Accordingly, the notice process satisfies the "best practicable notice" standard.

**C.    The Named Plaintiffs Service Awards Are Reasonable**

In approving the Settlement, the Court must determine whether "the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. In addition to the terms of the Settlement discussed above, the Settlement also provides for service awards of up to $5,000 for each of the three Plaintiffs. Plaintiffs previously set forth their argument in support of the service award in full in the Motion for an Award of Attorneys' Fees and Expenses and Named Plaintiffs Service Awards. ECF 147. For the sake of brevity, Plaintiffs do not repeat those arguments here. The Court should grant final approval to the requested service awards as reasonable.

**D.    The Requested Attorney's Fees and Expenses are Reasonable**

Likewise, in evaluating the Settlement the Court should evaluate Plaintiffs' request for attorneys' fees and costs pursuant to the terms of the Settlement. In their fee motion, Class Counsel request up to 30% of the Gross Settlement Amount, for a total of $360,000 plus reimbursement of

costs of $18,200.36.[12] Plaintiffs set forth their arguments in support of the fee and costs request in their Motion for an Award of Attorneys' Fees and Expenses and Named Plaintiffs Service Awards. ECF 147 (corrected Motion to reflect Class Counsel was requesting reimbursement of costs of $18,200.36 and not $17,798.36). For the sake of brevity, Plaintiffs do not repeat those arguments here. The Court should grant final approval to the requested fees and costs as reasonable.

### E.    The Class Meets the Requirements for Class Certification

In its August 16, 2023 preliminary approval order, the Court granted conditional certification of the Settlement Class, which consisted of a California Class and a California State Prison Sub-Class. ECF 139.[13] Now that notice has been effectuated, the Court should finally certify this Class in its Final Approval Order.

### 1.    The Class Satisfies the Requirements of Rule 23(a)

The proposed Class satisfies all the requirements of Rule 23(a).

Numerosity: The Class is sufficiently numerous that it makes joinder impracticable. Fed. R. Civ. P. 23(a)(1). Courts have generally found a class of at least 40 members meets the numerosity requirement. *See EEOC v. Kovacevich "5" Farms,* No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007). Here, the proposed Class has 101 members, and thus, easily meets this standard.

Commonality: Commonality is satisfied because there "are questions of law and fact common" to the proposed Class. *See Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 589 (9th Cir. 2012). Here, as discussed in greater detail below in the discussion of predominance, there are a number of questions that can be resolved with respect to the entire class. *See infra*. *See also* ECF

---

[12] Class Counsel also request that the Court order that in the event of a sale (or any other business combination that would cause VXL to cease to exist), upon which VXL is obligated to pay an additional $350,000 to the Gross Settlement Fund, the Court approve that VXL shall pay an additional thirty percent (30%) of such amount as attorneys' fees minus any additional Settlement Administrator Costs.

[13] With regards to the FLSA Claims, this Court continued to certify the class for FLSA purposes because plaintiffs demonstrated that all class members were similarly situated as they were all subject to the same employment policies and practices. ECF 139. Further, the Amended Settlement Agreement provides that the FLSA claims will be released upon the cashing of an individual's settlement check for individuals who have not already opted-in. ECF 139-1.

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019 ◆ San Francisco, CA 94104

139 (finding commonality satisfied as "[t]he focus of this action – whether plaintiffs were misclassified as independent contractors – are common to all class members.)

Typicality: The typicality requirement of Fed. R. Civ. P. 23 (a)(3) is satisfied because Plaintiffs' claims are typical of the claims asserted on behalf of the Class. Typicality is established if representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Plaintiffs' claims arise out of the same factual and legal circumstances as the claims of other Class Members: like all Class Members, the Named Plaintiffs were subject to the same alleged illegal policies and practices. *See also* ECF 139 (typicality is satisfied because "Plaintiffs' claims are typical of the claims of settlement class members because they arise from the same course of alleged conduct: like all class members, named plaintiffs were misclassified and therefore subject to the same illegal employment policies and practices"). As this Court previously noted, Mr. Avant's settlement of his individual claim does not make him an atypical representative. *Id*. at 5.

Adequacy: Plaintiffs have fairly and adequately protected the interests of the class and will continue to do so. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other class members, and the named plaintiffs and their counsel will vigorously prosecute the interests of the class. *See Hanlon*, 150 F.3d at 1020;. Here, Plaintiffs share an interest to prosecute the claims on behalf of themselves and the Class, have vigorously prosecuted the claims, and have no conflicts of interest with Class Members. In addition, Class Counsel has substantial experience in class action and employment litigation, including wage and hour class actions. Lechtzin Decl. ¶ 2; ECF 128-3 (Edelson Lechtzin, LLP Firm Resume), and Declaration of Daniel Feder in Support of Plaintiff's Motion for Preliminary Approval of Settlement (ECF 130). *See also* ECF 139 (finding the adequacy requirement met).

## 2.    The Class Satisfies Predominance and Superiority

The Class satisfies the requirements of Fed. R. Civ. P. 23 (b)(3), because common questions "predominate over any questions affecting only individual members," and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." First, the Class satisfies the predominance requirement, which examines whether the proposed class is

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

"sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs contend the common questions raised in this action predominate over any individualized questions. The Class is cohesive because resolution of Plaintiffs' claims hinge on the uniform policies and practices of Defendants. As a result, the resolution of these alleged class claims would be achieved through the use of common forms of proof, such as Defendants' uniform policies and practices.

Further, Plaintiffs contend the class action mechanism is a superior method of adjudication compared to the prospect of a multitude of individual lawsuits. To determine whether the class approach is superior, courts are to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, the Class Members would not have a strong interest in controlling their individual claims. The action involves workers with very similar, but relatively small, claims for monetary injury. Moreover, the Parties are not aware of any similar litigation commenced by any Class Members against VXL. The absence of similar individual lawsuits bespeaks a lack of interest in prosecuting such actions. In addition, it is desirable to concentrate this litigation in a single forum here in the Northern District of California rather than having multiple similar cases being litigated in different courts. If Class Members proceeded on their claims as individuals, such individual lawsuits would require duplicative discovery and duplicative litigation, and each Class Member would have to personally participate in the litigation to an extent that would never be required in a class proceeding. Thus, the class action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation.

The issues raised by the present case are much better handled collectively by way of a settlement. Manageability "is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

The Law Office of Daniel Feder ◆ San Francisco, CA 94104
235 Montgomery Street, Suite 1019

The Settlement presented by the Parties ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal system with numerous cases. Accordingly, class treatment is efficient and warranted, and the Court should certify the Class for settlement purposes.

**V. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this Motion for final approval and enter the accompanying proposed Order.

Date: December 18, 2023

Respectfully Submitted,

*/s/ Eric Lechtzin*
Eric Lechtzin (SBN: 248958)
**EDELSON LECHTZIN LLP**
411 S State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Facsimile: (267) 685-0676
elechtzin@edelson-law.com

DANIEL FEDER (SBN 130867)
**LAW OFFICES OF DANIEL FEDER**
235 Montgomery Street, Suite 1019
San Francisco, CA 94104
Telephone: (415) 391-9476
Facsimile: (415) 391-9432
daniel@dfederlaw.com