**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LESLIE AVANT, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**VXL ENTERPRISES LLC, ET AL.,**<br><br>Defendants. | Case No.: 4:21-cv-2016-YGR<br><br>**ORDER**<br>**GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br><br>**GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD; AND**<br><br>**JUDGMENT**<br><br>Re: Dkt. No. 147 and 152 |

The Court previously granted a motion for preliminary approval of the Class Action Settlement between plaintiffs Leslie Avant, Johnnye Duffy, and Janelle Hernandez Avitia and defendants VXL Enterprises LLC and Matthew Crouse on August 16, 2023. (Dkt. No. 139.) As directed by the Court's preliminary approval order, on October 25, 2023, plaintiffs filed their unopposed motion for attorneys' fees, costs, and service awards. (Dkt. No. 147.) Plaintiffs then filed their unopposed motion for final settlement approval on December 18, 2023. (Dkt. No. 152.) The Court held the fairness hearing on January 23, 2024.

Having considered the motion briefing, the terms of the Settlement Agreement, the response thereto, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for final approval and attorneys' fees, costs and incentive awards. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representative and class counsel are confirmed. The Court **ORDERS** that class counsel shall be paid $360,000 in attorneys' fees and $18,200.36 in litigation costs and class representatives and named plaintiffs Leslie Avant, Johnnye Duffy, and Janelle Hernandez Avitia shall each be paid a $5,000 incentive award.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

Plaintiffs filed the operative Consolidated Class Action and Collective Complaint on June 6, 2022. (Dkt. No. 93, "CCACC.") Plaintiffs are medical staff who were hired by defendants, VXL Enterprises, LLC, and its CEO, Matthew Crouse, to provide care for inmates in California federal and state prisons during the COVID-19 pandemic. Plaintiffs bring this class action under the Federal Labor Standards ("FLSA"), 29 U.S.C. § 201, *et seq.*, California Labor Code §§ 203, 204, 510, and 1194, and California Business & Professions Code § 17200, *et seq.* Plaintiffs alleged that they were systemically underpaid because VXL misclassified them as independent contractors, rather than fulltime employees. In addition, plaintiff Avant brought an individual claim for breach of contract against defendants for early termination of his contract without sufficient notice and/or cause.

The parties engaged in limited discovery before beginning settlement discussions. After several rounds of settlement conferences in front of Magistrate Judge Tse, the parties filed a notice of class settlement on March 30, 2023. This motion followed shortly thereafter.

### B. TERMS OF THE SETTLEMENT AGREEMENT

Under the terms of the Settlement Agreement, defendants will pay $1,200,000 into a common settlement fund, without admitting liability. This sum will be paid out in three annual installments. This amount includes attorneys' fees and costs, the cost of class notice and settlement administration, the class representatives' service awards, as well as $20,000 for plaintiff Avant's individual claim. In the event that VXL is sold (or any other business combination that would cause VXL to cease to exist), defendants will make any remaining payments at or before the close of the sale and pay an additional $350,000 to the Gross Settlement Amount (increasing the total to $1,550,000). In case of bankruptcy, plaintiffs will also have a priority wage claim.

#### 1.   *Attorneys' Fees and Costs*

Under the Settlement Agreement, plaintiffs' counsel seeks up to thirty percent of the Settlement Fund ($360,000), plus out-of-pocket costs and expenses incurred by class counsel, which are currently estimated at $20,000. The Settlement Agreement also includes a provision for

1 settlement administration costs to be paid out of the Settlement Fund. Parties' selected Settlement
2 Administrator, Analytics Consulting, LLC, estimates its costs will be $35,000. Lastly, the
3 Settlement Agreement provides for a service award of $5,000 each to be paid to the three class
4 representatives.

*2.     Class Relief*

After deductions from the common fund for fees, costs, service awards, and plaintiff Avant's individual claim, $750,000 will remain to be distributed on a pro rata basis among settlement class members. The average recovery per class member will amount to $7,348.35.

*3.     Cy Pres/ Remainder*

Any uncashed check funds remaining after the final check-cashing deadline (i.e., after the third annual installment) will be paid to an agreed *cy pres* recipient approved by the Court. The parties have proposed the University of California Berkeley's Institute for Research on Labor and Employment. The Settlement Fund is non-revisionary; any funds remaining will be sent to the Court's chosen *cy pres* recipient.

C.     **CLASS NOTICE AND CLAIMS ADMINISTRATION**

Following the Court's preliminary approval and conditional certification of the settlement, the Settlement Administrator, Analytics, mailed the notice to the 101 class members. It sent notices to the class members via U.S. mail and email. Analytics also established a toll-free call center for telephone inquiries from class members. Finally, Analytics created a website, www.vxlsettlement.com, on which it posted the settlement documents.

Class members were given until November 7, 2023, to object to the terms of the settlement. Out of 101 class members, none objected. As of December 4, 2023, there were three class members who did not receive written notice because Analytics was unable to find updated addresses. Analytics attempted to email all three of the class members; it was able to send two of the emails successfully but the third bounced back.

## II. FINAL APPROVAL OF SETTLEMENT

### A. LEGAL STANDARD

A court may approve a proposed class action settlement of a class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

### B. ANALYSIS

#### 1. The Settlement Class Meets the Prerequisites for Certification

As the Court found in its order granting preliminary approval and conditional certification of the settlement class herein, the prerequisites of Rule 23 have been satisfied purposes of certification of the Settlement Class. (*See* Dkt. No. 139 at 4–5.)

#### 2. Adequacy of Notice

A court must "direct notice of a proposed class settlement in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice."

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court requested changes to the parties' initial proposed notice. After the parties made those changes, the Court found that the parties' modified proposed notice procedures provided the best notice practicable and reasonably calculated to apprise class members of the settlement and their rights to object or exclude themselves. (Dkt. No. 139 at 7–8.) Pursuant to those procedures, the Class Administrator, Analytics Consulting LLC, sent the 101 class members the notice via First Class mail on September 6, 2023. (Dkt. No. 150-1 ¶ 8.) The Class Administrator reports that sixteen notices were returned. (*Id.* ¶ 12.) It then successfully re-mailed thirteen of them but could not find an updated address for the remaining three when it searched the National Change of Address Database for a more current address. (*Id.* ¶ 12.) Analytics also emailed all 101 class members; of the three members who did not receive the notice in the mail, two had functioning emails while one did not. (Dkt. No. 152-4 ¶ 3.)

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### 3. *The settlement is fair and reasonable*

As the Court previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats class members equitably relative to one another. (Dkt. No. 139 at 6–7.)

In its preliminary approval order, the Court also approved the proposed plan of allocation. (Dkt. No. 139 at 7–8.) All Settlement Class Members will receive a pro rata share of the net settlement amount in three annual installments based upon the following objective formula that takes into account their tenure and payroll records during the relevant time period:

- For each overtime hour worked (i.e., hours worked over 8 hours a day) at Lompoc, a federal facility, based on defendants' records during the relevant time period, each Settlement Class Member will receive one (1) settlement share;
- For each overtime worked (i.e., hours worked over 8 hours a day) at San Quentin, or another California state prison, based on defendants' records, each Settlement Class Member will receive 1¼ settlement share;
- The total number of settlement shares of all Settlement Class Members will be added together, and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Settlement Class Member's number of settlement shares to determine the Settlement Class Member's Settlement Award.

The Court finds the plan of allocation to be fair and reasonable and to treat class members equitably and therefore approves that plan of allocation.

### 4.  *Objections*

The reaction of the class was overwhelmingly positive. There were no objections to the proposed settlement by the deadline of November 7, 2023. (Dkt. No. 150-1 ¶¶ 13–15.) "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

### 5.  *Certification is granted and the settlement is approved*

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be

proper. Because there were not requests for exclusion or objections, no class members are excluded from the final Settlement Class.

The *cy pres* recipient, University of California Berkeley's Institute for Research on Labor and Employment, is **APPROVED**.

## III.  MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

### A.  MOTION FOR ATTORNEYS' FEES

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

Class counsel requests an attorneys' fee award of $360,000. (Dkt. No. 147.) The attorneys' fees sought amount to 30% of the gross settlement amount. (*Id.*) Defendants do not oppose the fee request and no class member has challenged the requested award.

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the

7

relevant community.'"). Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel " 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

As the Court told counsel at the preliminary approval hearing, the Court typically approves only a 25% award, per Ninth Circuit precedent. Class counsel argues that a 30% award is fitting here, citing to other district court cases across the Ninth Circuit where class counsel in a wage-and-hour dispute represented a settlement class on a contingency basis. By way of cross-check, plaintiffs' counsel indicate that they have worked 711.5 hours litigating this case for a lodestar of $588,827. (Dkt. No. 147 at 10.) The detail provided do not appear unreasonable and the hourly rates are within normal ranges. Class counsel note that they are seeking significantly less than the lodestar, namely 61%. Even if the Court reduced the lodestar by ten (10) percent for normal inefficiencies, the total amount would still be higher than the amount requested.

Based on the foregoing, the Court finds an award of attorneys' fees in the amount of $360,000 to be fair, reasonable, and adequate. The Court finds that this will adequately reimburse counsel for the hours spent working on this case. The Court also finds that Class Counsel

1   represented their clients with skill and diligence and obtained an excellent result for the class,
2   taking into account the possible outcomes and risks of proceeding trial.

### B. COSTS AWARD

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $18,200.36. (Dkt. No. 147 at 12.) The Court finds this amount reasonable, fair, and adequate.

### C. INCENTIVE AWARD

The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, the three named plaintiffs came forward to represent the interests of 101 others. Plaintiffs expended substantial time assisting counsel in the prosecution of these claims, including providing valuable information and documents to counsel, assisting in the drafting of the pleadings, discussing the facts, and responding to discovery requests. Individual plaintiffs also attended settlement conferences. Finally, all three took a reputational risk in publicly affiliating themselves in litigation against a former employer. Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to

achieve a settlement that confers substantial benefits on others. Thus, the Court approves the requested incentive award payment for each plaintiff of $5,000.

### IV. CONCLUSION

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED** as follows: Class Counsel is awarded $360,000 in attorneys' fees and $18,200.36 in litigation costs. Named plaintiffs Leslie Avant, Johnnye Duffy, and Janelle Hernandez Avitia are each given a $5,000 service award.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on July 28, 2023, and this Order.

In the event of a sale (or any other business combination that would cause VXL to cease to exist), plaintiffs may enforce the terms of the Settlement Agreement, including that VXL shall pay an additional $350,000 to the Gross Settlement Fund and an additional thirty percent (30%) on such amount as attorneys' fees minus any additional Settlement Administrator Costs.

This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than May 22, 2024. The Court **SETS** a compliance deadline on **May 31, 2024,** on the Court's 9:01 a.m. calendar to verify timely filing of the post-distribution accounting.

This terminates Docket Nos. 147 and 152.

**IT IS SO ORDERED**.

Date: **January 24, 2024**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**